IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARISSA MARK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRIAN J. PATTON et al. | : | NO. 14-1623 |

## MEMORANDUM

**L. Felipe Restrepo, J.**                                                                 **December 9, 2014**

      Plaintiff, Marissa Mark, filed the instant action to obtain relief for: (1) negligent medical care she received while incarcerated at the Federal Detention Center in Philadelphia, PA ("FDC Philadelphia"), and (2) a violation of her constitutional rights while at the same facility. Presently before the Court is a Motion to Dismiss the Complaint by Brian J. Patton and FDC Philadelphia (ECF No. 11).[1]  For the reasons set forth below, the Court will: (1) dismiss the FTCA negligence claim against FDC Philadelphia and Patton with prejudice, and substitute the United States as the appropriate defendant for the FTCA negligence claim, (2) dismiss the FTCA negligence claim against the United States without prejudice, (3) dismiss the Bivens claim against FDC Philadelphia with prejudice, and (4) dismiss the Bivens claim against Patton without prejudice.

    I.    **FACTUAL BACKGROUND**

      Prior to November 19, 2011, Mark had limited vision in her left eye.  Compl. at 10.  On Saturday morning, November 19, 2011, while incarcerated at FDC Philadelphia, Mark awoke and was totally blind in her left eye.  Id. at 3.  Mark reported her condition to Officer Thomas,

---

[1] Defendants move to dismiss pursuant to Rule 12(b)(6), having initially interpreted the Complaint as only asserting claims against Patton and FDC Philadelphia under Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  After reviewing Mark's Motion for Reconsideration (ECF No. 12), Defendants have now interpreted the Complaint as also asserting a negligence claim against the United States pursuant to the Federal Tort Claims Act ("FTCA").

1

who contacted the FDC Philadelphia medical department.  Compl. at 3.  Thereafter, Mark was escorted from FDC Philadelphia to a Philadelphia area hospital.  Id.  While at the hospital, Mark did not see an ophthalmologist, but was prescribed Prednisone, a steroid.  Id.  After returning to FDC Philadelphia, Mark was required to take additional steroids.  Id.  At no time during this period was Mark informed about the side effects of Prednisone, which allegedly include loss of vision.

On Wednesday, November 23, 2011, Mark was taken to see an ophthalmologist.  Compl. at 3.  The ophthalmologist demanded that Mark discontinue the use of Prednisone immediately.  Id.  The ophthalmologist required Mark to follow up in two to three weeks, and also prescribed a neurologist appointment.  Id.  Mark never saw a neurologist while incarcerated at FDC Philadelphia, and although there was a follow up visit with the ophthalmologist, it was over six weeks after the initial ophthalmologist appointment.  Id.

On or about January 10, 2012, Mark was transferred from FDC Philadelphia to FCI Danbury.  Compl. at 3.  On March 12, 2012, Mark visited Dr. Wagner, the ophthalmologist at FCI Danbury.  Id.  Dr. Wagner indicated that Mark's sudden vision loss while at FDC Philadelphia could have been the result of a virus or a sign of Multiple Sclerosis (a subsequent MRI scan ruled out Multiple Sclerosis as a cause of the vision loss).  Id.  Dr. Wagner stated that Mark's vision more than likely would not return to its previous state, and it has not returned to that condition to date.  Id.  At present, Mark only has tunnel vision and blurred vision out of her left eye.  Id.  Mark can now only see out of the pupil of her left eye, while the surrounding area remains blurry and gray.  Id. at 10.  Mark describes the condition as optic neuritis.  Id. at 3, 10.  As a result of these circumstances, Mark seeks the following relief: "Official reprimands against the medical staff, as well as training in handling of inmate concerns.  Monetary compensation for

physical and emotional damage to my person, due to negligence, in the amount of $72,000,000." Compl. at 5, 7.

On October 11, 2012, the Northeast Regional Office of the Bureau of Prisons received plaintiff's administrative tort claim (designated as Administrative Claim TRT-NER-2013-01623) regarding Mark's loss of vision due to negligent medical care while at FDC Philadelphia. Compl. at 21 (Mar. 22, 2013 Letter).[2] On March 22, 2013, the Northeast Regional Office sent Mark a letter acknowledging that they had received her administrative tort claim on October 11, 2012. Id. On April 10, 2013, the Northeast Regional Office denied Mark's administrative tort claim and notified her that if she was dissatisfied with this decision, she had six months to bring an action against the United States in the appropriate United States District Court. Id. at 22 (Apr. 10, 2013 Letter).

II. **PROCEDURAL HISTORY**

Mark commenced this action on February 28, 2014, by filing a Petition for Writ of Habeas Corpus in the Northern District of Alabama, captioned as Mark v. Patton, case no. 7:14-cv-00359-MHH-HGD. ECF No. 1. Seeing that venue for was improper in the Northern District of Alabama for what appeared to be a Bivens action against Patton as the Warden of FDC Philadelphia, the Hon. Harwell G. Davis III issued an order transferring this action to the Eastern District of Pennsylvania. ECF No. 1. Upon transfer, this Court issued an Order on March 26,

---

[2] When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts are generally limited to considering "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). However, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id. While Defendants ask the Court to consider the Declaration of Marisa Davidson and several exhibits attached thereto, Defendants have not sufficiently established the basis for the Court to consider that factual matter or exhibits as presented by Defendants. Nevertheless, it appears that that key documents presented by the Davidson Declaration were already before the Court, as Mark attached them to the Complaint. See Compl. at 21, 22.

3

2014, dismissing Mark's Petition for a Writ of Habeas Corpus without prejudice to Mark's ability to file a civil rights action and an application to proceed in forma pauperis. ECF No. 2. As ordered by the Court, the Clerk of the Court provided Mark with the current version of the application to proceed in forma pauperis and the civil rights complaint form. ECF No. 2; ECF docket entry, dated Mar. 26, 2014. Mark filed the Complaint on June 9, 2014, using the civil rights complaint form as provided by the Clerk of the Court. ECF No. 6. Though the Complaint was styled as an action seeking relief pursuant to 42 U.S.C. § 1983, upon closer inspection it appears that Mark is alleging a tort claim for negligent medical treatment, as well as a constitutional claim under the Eighth Amendment's prohibition on cruel and unusual punishment. In their initial papers moving to dismiss the Complaint, Patton and FDC Philadelphia presented arguments as to why the Complaint failed to make out a viable Bivens cause of action. ECF No. 11 at 1 n.3. In opposition, Plaintiff filed a Motion for Reconsideration, entered on October 24, 2014.³ ECF No. 12. That document explained that Mark was pursuing a negligence claim arising from her medical treatment while at FDC Philadelphia. Id. (citing the FTCA; clarifying that she was harmed due to the negligence of the FDC Philadelphia medical staff). Defendants filed a reply in support of their motion, presenting arguments as to why the Complaint failed to make out a viable FTCA negligence claim. ECF No. 14. On November 17,

---

³ Mark filed a Motion for Reconsideration seemingly because she incorrectly believed that the proposed order that the U.S. Attorney's Office served and filed with its motion, as per the Court's rules, had actually been adopted and signed by the Court. The Court had not taken any position on the motion at that time, and issued an Order, dated October 28, 2014, explaining the status of the motion and allowing Mark until November 14, 2014, to file any further opposition to the motion to dismiss.

4

2014, Mark filed a Response to this Court's Order, dated October 28, 2014, in further support of her opposition to the motion to dismiss.[4]  ECF No. 15.

### III. **JURISDICTION AND LEGAL STANDARD**

This Court has subject-matter jurisdiction over Mark's constitutional claim pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).  The Court has subject-matter jurisdiction over Mark's FTCA negligence claim pursuant to 28 U.S.C. § 1346(b)(1).

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "This 'plausibility' determination will be a 'context-specific task that requires the reviewing court to draw on it judicial experience and common sense.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 679).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Fowler, 578 F.3d at 210-11.

---

[4] Though this document was not entered until November 17, 2014, it appears that Mark signed it on November 12, 2014, and that it was postmarked on November 13, 2014.  Accordingly, I will consider it to be timely filed and will consider the substance presented therein.

IV. **DISCUSSION**

    A. FTCA Negligence Claim

        1. *Proper Defendants*

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted). "The FTCA operates as a limited waiver of the United States's sovereign immunity." White-Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010) (citing Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003). The United States is the only proper defendant in a negligence action brought pursuant to the FTCA. 28 U.S.C. § 2679(a)-(c). Since FDC Philadelphia is a federal agency, and federal agencies cannot be sued in their own name under the FTCA, the FTCA negligence claim against FDC Philadelphia must be dismissed with prejudice. See F.D.I.C. v. Meyer, 510 U.S. 471, 476 (1994) (explaining that the FTCA prevents federal agencies from being sued in their own name). Where a federal employee is named as a defendant in a negligence action pursuant to the FTCA, the United States can be substituted as the proper defendant when the Attorney General certifies that the employee was acting within the scope of his office or employment at the time of the relevant incident. 28 U.S.C.§ 2679(d)(1). Here, the U.S. Attorney for the Eastern District of Pennsylvania provided the relevant certification on behalf of the Attorney General. Defs. Reply at Ex. 2. Accordingly, the FTCA negligence claim against Patton will be dismissed with prejudice, and the United States will be substituted as the proper and only defendant for Mark's FTCA negligence claim.

2.  *Statute of Limitations*

"Because the Federal Tort Claims Act constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed." Livera v. First Nat'l State Bank of N.J., 879 F.2d 1186, 1194 (3d Cir.1989).  One of those established procedures is that the claim must be presented to the appropriate Federal agency, and that the claim must be denied in writing before a claimant can file a Federal lawsuit.  28 U.S.C. § 2675(a).  The claimant must file their lawsuit within six months after the mailing of the final denial of the claim by the relevant agency.  28 U.S.C. § 2401(b).  The United States contends that Mark's FTCA claim is barred by the statute of limitations, because Mark filed the instant action more than six months after the Bureau of Prisons mailed her a written denial of her claim.

"A statute of limitations defense is an affirmative one, and in order to undergird a dismissal, must appear on the face of the complaint." Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 403 n.14 (3d Cir. 2006).  Here, the United States' statute of limitations defense appears on the face of the Complaint.  The BOP mailed its written denial of Mark's claim on April 10, 2013.  Compl. at 22 (Apr. 10, 2013 Letter).  Even if the Court were to use the earliest date possible to calculate the commencement of this action, February 28, 2014, the date on which Mark filed her Petition for Writ of Habeas Corpus in the Northern District of Alabama, Mark would still be over four months beyond the statute of limitations.  Accordingly, Mark's FTCA negligence claim against the United States will be dismissed without prejudice.[5]

---

[5]  The statute of limitations for the FTCA is not jurisdictional, and is subject to equitable tolling.  Santos v. United States, 559 F.3d 189, 194-95 (3d Cir. 2009).  Accordingly, the dismissal of this claim is without prejudice so that Mark may file an amended complaint that includes any and all facts that may justify equitable tolling of the statute of limitations, should such facts exist.

      B.  <u>Bivens Constitutional Claim</u>[6]

While it is not entirely clear if Mark is still pursuing claims against Patton and FDC Philadelphia for violating her constitutional rights pursuant to <u>Bivens</u>, the Court will address these claims out of an abundance of caution.  As a preliminary matter, <u>Bivens</u> claims cannot be pursued directly against federal agencies.  <u>Meyer</u>, 510 U.S. at 484-86.  Accordingly, Mark's <u>Bivens</u> claim against FDC Philadelphia for violating her constitutional rights will be dismissed with prejudice.  Conversely, <u>Bivens</u> claims can be pursued against federal employees.  Patton, as the Warden of FDC Philadelphia, is a federal employee who can be properly sued for violating constitutional rights.  Accordingly, further examination is warranted.

In the Complaint, Mark alleges as follows: "As an inmate, I have a right to proper medical care, as it is stated in the Program Statement.  When I surrendered my person into Federal custody, it was with the expectation of fair and humane treatment.  To be exposed to all types of infectious bacteria and filthy conditions, is just not acceptable."  Compl. at 10.  In addition, in her Response to Memorandum Dated 10/28/2014, Mark complains about the "lack of basic concern for inmates and their medical concerns."  Response at 1.  In light of these passages, it appears that Mark's <u>Bivens</u> claim is based on inadequate medical care and unsafe conditions of confinement in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.  Defendants argue that Mark has failed to specifically plead Patton's involvement in the alleged constitutional violations, and that a "supervisory official cannot be held liable in a <u>Bivens</u> claim under a vague and conclusory theory of respondeat superior."  Mot. to Dismiss at 6.  In response, Mark states that "she did not name the 'Warden' per say [sic], she

---

[6]  Federal officers may not be sued for constitutional violations pursuant to 42 U.S.C. § 1983.  <u>See</u> <u>Wheedlin v. Wheeler</u>, 373 U.S. 647 (1963).  Accordingly, I construe Mark's claim that her constitutional rights were violated as a claim brought pursuant to <u>Bivens</u>.

named the medical staff, under the umbrella of the facility, with the warden as its head," Mot. for Recons. at 2, and that "[t]he Warden in responsible for his staff."  Mot. for Recons. at 3.

In Iqbal, the Supreme Court announced that "[i]n a § 1983 suit or a Bivens action – where masters do no answer for the torts of their servants – the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  556 U.S. at 677.  The Third Circuit recently clarified this rule, noting that it did not read Iqbal to have abolished supervisory liability.  Barkes v. First Correctional Medical, Inc., 766 F.3d 307, 319 (3d Cir. 2014).  Rather, "the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged."  Id.  Barkes further clarified that where "the underlying tort is the denial of adequate medical care in violation of the Eighth Amendment's prohibition on cruel and unusual punishment [the requisite] mental state is subjective deliberate indifference."  Id. (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994)).  In addition, the Barkes decision confirmed that the test announced in Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989), continues to be the appropriate means to determine whether a supervisor was deliberately indifferent in Eighth Amendment deprivation of care claims.  The Third Circuit summarized the test as follows:

> The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

Barkes, 766 F.3d at 317.  Accordingly, a plaintiff can recover against a supervisor like Patton, where that official, "by virtue of his or her *own* deliberate indifference to *known* deficiencies in a government policy or procedure, has allowed to develop an environment in which there is an

9

unreasonable risk that a constitutional injury will occur, and that such an injury *does* occur." Id. at 320.

Applying the above-described framework to Mark's allegations in the Complaint, the Bivens claim against Patton must be dismissed. Mark has not identified a supervisory policy or practice that Patton failed to employ, and thus has not satisfied the first hurdle in stating a Bivens claim against a supervisor for a deprivation of medical care in violation of the Eighth Amendment. The dismissal of this claim is without prejudice.

An appropriate order follows.